UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                         :

ZONG LAU and HUI LAU,           :

                         :

         Plaintiffs,     :

                         :        23 Civ. 1385 (JPC) (GWG)

      -v-               :

                         :       <u>OPINION AND ORDER</u>

SPECIALIZED LOAN SERVICING, LLC, *et al.*,  :       <u>ADOPTING REPORT AND</u>

                         :       <u>RECOMMENDATION</u>

         Defendants.    :

                         :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      This matter concerns the foreclosure of an apartment formerly belonging to the late Jsang

Kei Lau, and the efforts of his daughters, Plaintiffs Zong Lau and Hui Lau, to enjoin the sale of

that property.  Having struggled to obtain the information they felt that they needed to "save [their]

home," *see* Dkt. 22 ("Am. Compl.") ¶¶ 58, 64, 68, 71, 75, 80, Plaintiffs proceed *pro se* against

Specialized Loan Servicing, LLC ("Specialized"), Computershare Loan Services

("Computershare"), U.S. Bank Trust, N.A., as Trustee for LSF 10 Master Participation Trust

("U.S. Bank Trust"), Fay Servicing, LLC ("Fay"), Caliber Home Loans, Inc. ("Caliber"), and

Newrez, LLC ("Newrez") under the Garn-St Germain Depository Institutions Act of 1982 (the

"Garn-St Germain Act"), 12 U.S.C. § 1701j-3; the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, and its implementing procedures under Regulation X, 12

C.F.R. §§ 1024.1 *et seq.*; the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and its

implementing procedures under Regulation Z, 12 C.F.R. §§ 1026.1 *et seq.*; the Dodd-Frank Act,

12 U.S.C. §§ 5301 *et seq.*; and the Fifth and Fourteenth Amendments to the United States

Constitution.

Defendants moved to dismiss, and in a Report and Recommendation issued on September 20, 2023, the Honorable Gabriel W. Gorenstein recommended dismissing Plaintiffs' six-Count Amended Complaint in its entirety and denying leave to amend all but one claim.  Plaintiffs timely filed objections, to which Defendants declined to respond.   While sympathetic to Plaintiffs' endeavors to retain the property formerly owned by their late father, the Court finds that Plaintiffs have failed to state any cognizable cause of action.  Accordingly, the Court overrules Plaintiffs' objections, adopts the Report and Recommendation as modified below, grants Defendants' motions to dismiss, and dismisses the Amended Complaint.

## I. Background

### A.      Facts[1]

In September 2006, Jsang Kei Lau executed a mortgage (the "Mortgage") on 62 Rivington Street, Apartment 8B, in New York City (the "Property").  Am. Compl. ¶¶ 1, 17.  The Mortgage was initially held by HSBC Mortgage Corporation ("HSBC").  *Id.* ¶ 17; *see* Dkt. 39-3 at 1-5 ("Foreclosure Complaint") (attached as Exhibit 1 to the Fitzpatrick Declaration).  On February 9, 2009, HSBC commenced a foreclosure action in New York Supreme Court, New York County,

---

[1] The following facts are drawn from the allegations in the Amended Complaint, which are assumed true for the purposes of this Opinion and Order.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007) ("In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court is to accept as true all facts alleged in the complaint.").  The Court further relies on documents that are integral to the Amended Complaint and any documents of which the Court may properly take judicial notice—including the public filings in the related state court action and documents concerning the assignment of the subject mortgage, which have been filed by Defendants U.S. Bank Trust, Fay, Caliber, and Newrez as exhibits annexed to the declaration of Michael Fitzpatrick, Dkts. 39-2 ("Fitzpatrick Declaration"), 39-3 (Exhibits 1 through 9), 39-3 (Exhibits 10 through 16), 39-7 (Exhibit 20).  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) (explaining that district courts may consider documents integral to a complaint in considering a motion to dismiss); *see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (noting that courts "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss").

against Mr. Lau for his alleged failed to comply with the terms of the Mortgage. *See generally* Foreclosure Complaint. And on September 14, 2018, the state court entered a foreclosure judgment against Mr. Lau. *See* Dkt. 39-3 at 6-15 ("Foreclosure Judgment") (attached as Exhibit 2 to the Fitzpatrick Declaration). Although the sale had been calendared for May 1, 2019, the scheduled auction did not take place, apparently due to a stay in effect from Mr. Lau's filing for Chapter 7 bankruptcy on April 30, 2019. *See id.* at 21-22 (state court sale order dated October 24, 2019, and filed on October 28, 2019, discussing the stay, attached as Exhibit 4 to the Fitzpatrick Declaration); *see also id.* at 25-26 (order dismissing the April 2019 bankruptcy, attached as Exhibit 6 to the Fitzpatrick Declaration). That bankruptcy case was dismissed on September 17, 2019. *Id.* at 26.

On October 24, 2019, the state court ordered the sale to be scheduled on or before January 22, 2020. *Id.* at 21-22. On December 10, 2019, the New York Supreme Court's Appellate Division, First Department, denied without prejudice Mr. Lau's appeal of the sale order and his request to stay the sale pending resolution of appeal, because of Mr. Lau's failure to serve the motion papers. *See id.* at 23-24 (state appellate court order, attached as Exhibit 5 to the Fitzpatrick Declaration).

That same day, Mr. Lau filed for Chapter 7 bankruptcy once again and, a few weeks later, Mr. Lau filed an emergency order to show cause to extend the automatic stay. *See id.* at 28-32 (Mr. Lau discussing the December 10, 2019 bankruptcy petition in his December 30, 2019 affidavit, attached as Exhibit 7 to the Fitzpatrick Declaration); *id.* at 34-36 (emergency application, attached as Exhibit 8 to the Fitzpatrick Declaration). The bankruptcy court denied the extension motion and terminated the automatic stay on February 20, 2020, Dkt. 39-4 at 2-3 (order, attached as Exhibit 9 to the Fitzpatrick Declaration), and on March 19, 2020, the bankruptcy court dismissed

3

the second bankruptcy action, *id.* at 9-10 (order, attached as Exhibit 11 to the Fitzpatrick Declaration).  Appeals of the bankruptcy court's denial of Mr. Lau's extension motion to the district court and then to the Second Circuit have been dismissed.  *See In re Jsang Kei Lau*, No. 20 Civ. 1930 (ALC) (S.D.N.Y.), Dkt. 40 (district court's February 26, 2021 order dismissing the appeal); Dkt. 39-7 at 2-3 (Second Circuit's August 26, 2022 dismissal, attached as Exhibit 20 to the Fitzpatrick Declaration).

On November 21, 2020, Mr. Lau passed away.  Am. Compl. ¶ 29.

During the course of these many proceedings, the Mortgage underwent several assignments.  *See* Dkt. 39-3 at 17-20 (February 11, 2019 assignment of the Mortgage from Specialized to US Bank Trust, attached as Exhibit 3 to the Fitzpatrick Declaration).  As relevant here, in 2018, the Mortgage was assigned to Defendant Specialized.  *Id.* at 18.  And in February 2019, Specialized transferred the Mortgage to Defendant U.S. Bank Trust, as trustee for LSF 10 Master Participation Trust, which currently holds the Mortgage.  *See id.* at 17-18.  It appears that Specialized was also servicing the loan until January 22, 2019, when servicing was transferred to Defendant Caliber.  Dkt. 39-7 at 35-36 (January 31, 2019 letter from Caliber regarding the transfer of servicing from Specialized to Caliber); *see also* Am. Compl. ¶ 33 ("Specialized[] informed [Mr. Lau] during his lifetime that his account was transferred to Caliber in or around January 2019.").  Caliber transferred these duties to Defendant Fay sometime in August 2021.  Am. Compl. ¶ 44.

At some point after January 2022, Plaintiffs tried to apply for assistance related to the Property from the New York State Homeowner Assistance Fund (the "NYSHAF").  *Id.* ¶¶ 31-32.  But because they had not received any mortgage statements since March 2020, Plaintiffs were "uninformed as to the Mortgage details."  *Id.* ¶ 35.  Plaintiffs thus requested backdated statements from both Caliber and counsel for Specialized.  *Id.* ¶¶ 35-36.  But they received nothing.  *Id.*  In

4

March 2022, Plaintiffs' application with the NYSHAF was "deemed abandoned" for their failure to provide mortgage statements. *Id.* ¶¶ 32, 40.

On December 15, 2022, Plaintiffs learned of a foreclosure sale of the Property, *id.* ¶ 45, which at the time was scheduled for March 29, 2023, *id.* ¶ 55. Plaintiffs contacted counsel for Specialized, who informed Plaintiffs that if they "wanted to keep the Property, . . . [they] needed to reinstate the Mortgage by paying all past due amounts," *id.* ¶ 49, and that "prospective borrowers would need to be thoroughly evaluated as if a refinance took place," *id.* ¶ 50. Plaintiffs allege that counsel for Specialized "was violating federal statutes to prevent [Plaintiffs'] mortgage assumption," and that they were "barred from filing a motion" to that effect in state court. *Id.* ¶¶ 51-55.

## B.    Procedural History

Plaintiffs commenced the instant action on February 17, 2023, alleging violations of the Garn-St Germain Act, RESPA, TILA, the Dodd-Frank Act, the Fifth Amendment, and the Fourteenth Amendment, and proceeding against Specialized, Computershare (which is alleged to have acquired Specialized in 2020, *see* Am. Compl. ¶¶ 10-11), U.S. Bank Trust, Fay, Caliber, and Newrez (which is alleged to have acquired Caliber in 2021, *id.* ¶ 14). Dkt. 1. A week later, the undersigned referred the matter to Judge Gorenstein for general pretrial supervision and for a report and recommendation on a dispositive motion. Dkt. 3. On March 10, 2023, Plaintiffs moved for a temporary restraining order and a preliminary injunction to enjoin the March 29, 2023 foreclosure sale, Dkt. 12, which motion the Court denied on March 23, 2023, Dkt. 29. The next day, Plaintiffs filed an order to show cause to enjoin the foreclosure sale in the state court foreclosure action. *See* Dkt. 39-7 at 10-18. On March 27, 2023, Plaintiffs appealed this Court's denial of injunctive relief, Dkt. 30, and on the same day, the state court cancelled the scheduled sale on the ground that notice

of the sale had not been properly given, Dkt. 39-7 at 20.  As a result, on May 10, 2023, the Second Circuit dismissed Plaintiffs' appeal as moot.  Dkt. 51.

Meanwhile, on March 13, 2023, this Court granted Plaintiffs leave to amend their original Complaint to address deficiencies in their pleading as to the parties' diversity.  Dkt. 13.  On March 17, 2023, Plaintiffs filed the Amended Complaint.  Dkt. 22.  In Count One, Plaintiffs allege that Defendants "violated the Garn-St. Germain [Act] by triggering the due on sale clause for which transfer where the spouse or children of the borrower become an owner of the property is exempt." Am. Compl. ¶ 57.  In Count Two, Plaintiffs allege that "Defendants withheld mortgage statements" to which Plaintiffs were entitled "as Heirs-at-Law and Successors-in-Interest," "failed to notify [Plaintiffs] of [the] mortgage servicing transfer from Caliber to Fay," and "disallowed [Plaintiffs] to assume the Mortgage or pursue loss mitigation options, including a loan modification," all in violation of RESPA or its implementing regulation, Regulation X.  *Id.* ¶¶ 60-64.  In Count Three, Plaintiffs once again allege that "Defendants failed to notify [Plaintiffs] of [the] mortgage servicing transfer from Caliber to Fay" and further accuse Defendants of wrongfully "activat[ing] the Ability-to-Repay test on [Plaintiffs]," in violations of TILA and its implementing regulation, Regulation Z.  *Id.* ¶¶ 66-67.  In Count Four, Plaintiffs allege that "Defendants engaged in dual tracking when [Plaintiffs] tried to engage them in a number of home retention proposals," in violation of the Dodd-Frank Act.  *Id.* ¶ 70.  In Count Five, Plaintiffs bring a Fifth Amendment claim based on their inability "to seek relief at the state court due to improper e-file case conversions and random case re-assignment on the part of the Defendants, who somehow [were] able to circumvent state court rules."  *Id.* ¶ 73.  And finally, in Count Six, Plaintiffs bring a Fourteenth Amendment claim, alleging that they never "receive[d] a state mandatory settlement conference [as] required under New York[] CPLR § 3408" or a "mandated foreclosure conference

per [] Administrative Order 157/20." *Id.* ¶¶ 77-78.   As relief, Plaintiffs seek an injunction enjoining the sale of the Property, an "Order allowing [Plaintiffs] to assume the Mortgage," and statutory and punitive damages. *Id.* ¶ 81.

On April 10 and 11, 2023, Defendants moved to dismiss the Amended Complaint—with Specialized and Computershare jointly filing one motion and Caliber, Fay, Newrez, and U.S. Bank Trust jointly filing another. *See* Dkts. 35, 39-2.  On May 23, 2023, Plaintiffs opposed dismissal and cross-moved for a declaratory judgment on Plaintiffs' entitlement to assume the Mortgage. Dkt. 53 ("Opposition").  Defendants replied on June 13, 2023. *See* Dkts. 54, 57.  Plaintiffs filed a sur-reply a week thereafter.  Dkt. 58.

On September 19, 2023, Plaintiffs again moved for a temporary restraining order and a preliminary injunction to enjoin the sale of the Property, which apparently had been rescheduled for October 11, 2023.  Dkt. 63.  The Court denied Plaintiffs' motion on October 4, 2023, Dkt. 78, and Plaintiffs once again appealed, Dkt. 79.

Meanwhile, on September 20, 2023, Judge Gorenstein issued the Report and Recommendation, recommending that the Court grant Defendants' motions and dismiss the Amended Complaint in its entirety.  Dkt. 66 ("R&R").  Judge Gorenstein found that, to the extent Plaintiffs sought to "stand in [Mr.] Lau's shoes" and alter the state court's judgment of foreclosure and sale order, such relief was barred by the *Rooker-Feldman* doctrine. *Id.* at 11-14.  He further determined that Plaintiffs' Garn-St Germain Act claim was precluded under the doctrine of *res judicata*, *id.* at 14-17, and that Plaintiffs' Fifth Amendment claim was moot (and, in any event, not cognizable), *id.* at 20, 28.   As to the remainder of Plaintiffs' claims, Judge Gorenstein recommended dismissal on their merits. *See id.* at 21-24 (recommending dismissal of Plaintiffs' RESPA claim for failure to plead submission of a "qualified written request," failure to allege

actual damages in connection with the alleged lack of notification of the transfer of loan servicing duties, and the lack of a private right of action under the portion of Regulation X outlining RESPA's loss mitigation procedures); 24-26 (recommending dismissal of Plaintiffs' TILA claim as time-barred or facially meritless), 26-27 (recommending dismissal of Plaintiffs' Dodd-Frank Act claim for failure to plead submission of a "complete loss mitigation application"), 28-29 (recommending dismissal of Plaintiffs' Fourteenth Amendment claim because Defendants are not state actors).  Next, Judge Gorenstein recommended dismissal of all claims against Newrez with prejudice for the absence of any allegations against it and further determined that Plaintiffs' request for declaratory relief was not properly before the Court.  *Id.* at 29.  Lastly, Judge Gorenstein recommended that leave to amend be denied as to all claims, save for Plaintiffs' RESPA claim against Caliber and Fay for their alleged failure to provide the requisite notice regarding the transfer of loan servicing in August 2021.  *Id.* at 30.

Plaintiffs filed objections to the Report and Recommendation on October 17, 2023.  Dkt. 84 ("Objections").  Defendants did not respond to those objections.

Then, on February 12, 2024, the Second Circuit dismissed Plaintiffs' appeal of this Court's denial of Plaintiff's second motion for a temporary restraining order and a preliminary injunction, finding that the appeal "lack[ed] an arguable basis either in law or fact."  Dkt. 85.  On April 10, 2024, this Court solicited further information from the parties on the status of the foreclosure sale and any other relevant updates since the Second Circuit's dismissal.  Dkt. 86.  U.S. Bank Trust, Fay, Caliber, and Newrez advised the Court that they anticipated Plaintiffs filing a petition for writ of certiorari to the Supreme Court regarding the Second Circuit's summary dismissal of their appeal and further that, as of April 11, 2024, the foreclosure sale had yet to be scheduled.  Dkt. 87.

## II.  Legal Standards

### A.      Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a Report and Recommendation, and must conduct *de novo* review of any part of the magistrate judge's disposition to which a party submits a proper objection.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).  "To be proper, an objection must be clearly aimed at particular findings, and may not be conclusory or general."  *Riaz v. Comm'r of Soc. Sec.*, No. 20 Civ. 8418 (JPC) (SLC), 2022 WL 4482297, at *2 (S.D.N.Y. Sept. 27, 2022) (internal quotation marks and citations omitted).  "Parties may neither regurgitate the original briefs to the magistrate judge nor raise new arguments not raised to the magistrate judge in the first instance."  *Id.* (internal quotation marks omitted); *accord United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019).  On the other hand, a district court reviews for clear error those parts of a Report and Recommendation to which no party has filed proper or timely objections.  28 U.S.C. § 636(b)(1)(A); *see Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008) ("To accept those portions of the report to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks omitted)).

### B.      Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro*, 807 F.3d at 544, it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).  Moreover, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted).  But this liberal treatment is not boundless.  *See Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 428 (S.D.N.Y. 2017) ("[T]he liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (internal quotation marks omitted)).

### III.  Discussion

Plaintiffs' objections are, at times, difficult to understand and appear to reiterate arguments presented to Judge Gorenstein.  Nevertheless, in an abundance of caution, this Court reviews the Report and Recommendation *de novo*—save for the portions regarding Plaintiffs' constitutional claims and Plaintiffs' claims against Newrez, to which Plaintiffs raised no objections.

**A.       Count One (Garn-St Germain Act Claim)**

First, Plaintiffs allege that Defendants[2] violated the Garn-St Germain Act, 12 U.S.C.
§ 1701j-3, which governs "due-on-sale" provisions in real property loans.  Am. Compl. ¶ 57.  As
defined in that Act, a "due-on-sale clause" is "a contract provision which authorizes a lender, at
its option, to declare due and payable sums secured by the lender's security instrument if all or any
part of the property, or an interest therein, securing the real property loan is sold or transferred
without the lender's prior written consent."  12 U.S.C. § 1701j-3(a)(1).  The Act prevents a lender
from exercising its option under such a clause "upon . . . a transfer where the . . . children of the
borrower became an owner of the property," *id.* § 1701j-3(d)(6), or "a transfer to a relative
resulting from the death of a borrower," *id.* § 1701j-3(d)(5).  Plaintiffs' claim in Count One appears
to hinge on the premise that Defendants attempted to enforce a due-on-sale clause and seek the
full balance of the Mortgage upon Mr. Lau's death, at which point Plaintiffs were presumably
meant to inherit the Property.

To start, that premise is unfounded.  The full balance of the Mortgage was sought in
connection with HSBC's 2009 foreclosure action—not in connection with any Defendant's
enforcement of a due-on-sale clause.  Indeed, in its foreclosure complaint, HSBC expressly cited
the Mortgage's acceleration clause, which provides, in substance:

---

[2] Plaintiffs bring each Count against all Defendants and fail to specify what conduct each
Defendant undertook to give rise to the cause of action.  Given that Plaintiffs are proceeding *pro
se*, the Court overlooks this pleading deficiency, which, in other contexts, could warrant dismissal.
*See Adamou v. Cnty. of Spotsylvania, Va.*, No. 12 Civ. 7789 (ALC), 2016 WL 1064608, at *11
(S.D.N.Y. Mar. 14, 2016) ("Pleadings that fail to differentiate as to which defendant was involved
in the alleged unlawful conduct are insufficient to state a claim."); *cf. Atuahene v. City of Hartford*,
10 F. App'x 33, 34 (2d Cir. 2001) (observing that the pleading standard of Federal Rule of Civil
Procedure 8 "requires, at a minimum, that a complaint give each defendant fair notice of what the
plaintiff's claim is and the ground upon which it rests," and that a complaint fails to meet that
minimum where it "lump[s] all the defendants together in each claim and provide[s] no factual
basis to distinguish their conduct" (internal quotation marks omitted)).

> (a) That the whole of the principal sum and interest shall become due at the option of the mortgagee after default in the payment of any installment of principal, or of interest, or after a default in the payment of any real estate tax, assessment, water rate and/or sewer rent after due demand for payment; (b) That upon any default the mortgagor will pay to the mortgagee any sums paid for taxes, charges, assessments and insurance premiums upon said mortgaged premises.

Foreclosure Complaint ¶ 10; *see also id.* ¶ 11 ("[HSBC] has elected to accelerate the mortgage balance and declare the same to be immediately due and payable."); Foreclosure Judgment at 3 (recognizing that "the whole amount secured by [the] [M]ortgage [was] due and payable" as of that order's entry on September 14, 2018). As the full balance of the payments was not sought pursuant to an invocation of a due-on-sale clause, the Garn-St Germain Act plainly does not apply—notwithstanding Plaintiffs' bare, misguided assertion that "it doesn't matter what contributed to the acceleration," Opposition ¶ 122.

Moreover, even setting aside that the Mortgage was accelerated based on Mr. Lau's default—which version of events Plaintiffs do not dispute in their Opposition, *see id.*—the only factual allegation conceivably related to Plaintiffs' theory that Defendants sought to enforce a due-on-sale clause after Mr. Lau's passing is a description of a portion of a conversation, during which a representative of Specialized's counsel purportedly explained "that if [Plaintiffs] wanted to keep the Property, then [Plaintiffs] needed to reinstate the Mortgage by paying all past due amounts or [sic] a due on sale clause." Am. Compl. ¶ 49. This allegation is insufficient to state a claim under the Garn-St Germain Act, assuming such a claim is even available in the first instance. Indeed, federal courts that have addressed claims arising under Section 1701j-3 have concluded that the Garn-St Germain Act does *not* provide a private right of action. *See, e.g.*, *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1011 (6th Cir. 2018); *Nelson v. Nationstar Mortg. LLC*, No. 7:16 Civ. 307 (BR), 2017 WL 1167230, at *2 (E.D.N.C. Mar. 28, 2017); *Dupuis v.*

*Yorkville Fed. Sav. & Loan Ass'n*, 589 F. Supp. 820, 823 (S.D.N.Y. 1984).  The Court thus dismisses Count One.[3]

**B.      Count Two (RESPA and Regulation X Claim)**

Next, Plaintiffs bring in Count Two three separate theories for Defendants' violation of RESPA, which provides a cause of action for certain loan servicing violations, 12 U.S.C. § 2605, and RESPA's implementing regulation, Regulation X, 12 C.F.R. §§ 1024.1 *et seq*.  Specifically, Plaintiffs allege that "Defendants withheld mortgage statements" to which Plaintiffs were entitled "as Heirs-at-Law and Successors-in-Interest," Am. Compl. ¶ 61, "failed to notify [Plaintiffs] of a mortgage servicing transfer from Caliber to Fay," *id.* ¶ 62, and "disallowed [Plaintiffs] to assume the Mortgage or pursue loss mitigation options, including a loan modification," *id.* ¶ 63.  The Court considers each theory in turn.

First, as Judge Gorenstein noted, RESPA does not "impose a requirement upon servicers (or owners) of a mortgage loan to provide [borrowers with] regular mortgage statements."  R&R

---

[3] The undersigned notes that, in the Report and Recommendation, Judge Gorenstein construed Count One as a broad challenge to HSBC's 2009 acceleration of the Mortgage and recommended dismissal of Count One based on *res judicata* grounds because any such challenge could have been raised in the foreclosure action before the state court.  R&R at 16-17.  Finding Plaintiffs in privity with their father as his alleged "Successors-in-Interest" regarding the Property, Judge Gorenstein determined that such claim was barred.  *Id.* at 17.  This Court agrees that, to the extent Plaintiffs seek to challenge the merits of the state court's judgment of foreclosure, such a claim would be precluded on *res judicata* grounds.  In their Objections to the Report and Recommendation, however, Plaintiffs urge that *res judicata* does not apply to Count One, because a claim regarding the acceleration of the Mortgage based on Mr. Lau's default is not the same as a claim regarding the "acceleration of [a] mortgage [*i.e.*, a lender's exercise of a due-on-sale clause] upon Borrower's death."  Objections ¶ 88.  Thus, liberally construing Plaintiffs' *pro se* submissions, this Court engages in the above analysis and determines that dismissal of Count One is appropriate because of the plain inapplicability of the Garn-St Germain Act to the pleaded allegations.

at 21.[4]  Judge Gorenstein thus construed Plaintiffs' claim as a violation of loan servicers' duty to

"respond to borrower inquiries" made pursuant to a "qualified written request from the borrower"

under 12 U.S.C. § 2605(e).  *Id.*  Finding that Plaintiffs have not even alleged that they submitted

such a written request, Judge Gorenstein concluded that Plaintiffs fail to state a claim under

RESPA based on Defendants' failure to provide mortgage statements.  *Id.*  Reviewing that portion

of the Report and Recommendation *de novo*, the Court reaches the same conclusion.

Plaintiffs urge the Court to consider their correspondence to counsel for Specialized as

"qualified written requests," apparently referring to three notices of change of address that

Plaintiffs filed in the state court action.  Objections ¶ 96*; see also* Am. Compl., Exh. B (notices of

change of address sent on March 22, 2021, March 26, 2021, and April 8, 2021).  This argument

requires disregarding the express language of the statute, which this Court declines to do.  A

qualified written request is defined in RESPA as a correspondence that identifies a borrower's

account and "includes a statement of the reasons for the belief of the borrower, to the extent

applicable, that the account is in error or provides sufficient detail to the servicer regarding other

information sought by the borrower."   12 U.S.C. § 2605€(1)(B)(ii).  Because nothing in the

Amended Complaint (or the attached copies of Plaintiffs' notices) suggests that Plaintiffs made

such requests, Plaintiffs' RESPA claim premised on a failure-to-respond theory cannot stand.  *Cf.*

*Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015) ("To plead a

---

[4] Plaintiffs ask this Court to construe their RESPA claim as a TILA claim in light of their *pro se* status.  Objections ¶ 94.  The Court declines.  Although *pro se* pleadings must be construed liberally, even this principle has its limits, and the Court cannot justify allowing Plaintiffs to raise a new claim in their objections to the Report and Recommendation, especially considering the potential prejudice to Defendants.  *Cf. Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774 (LAP), 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014) ("[N]ew arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all.").

claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a [qualified written request] or notice of error.").

Second, Plaintiffs seek to hold Defendants liable under RESPA for failing to provide notice of the mortgage servicing transfer.  Am. Compl. ¶ 62.  Plaintiffs claim that, as a result of this failure, they were "deprived of an opportunity to save [their] home."  *Id.* ¶ 64.

RESPA requires the transferor of loan servicing to "notify the borrower in writing of any assignment, sale, or transfer" within a fifteen-day period before the transfer is effective, 12 U.S.C. § 2605(b), and the transferee to "notify the borrower" within fifteen days after the effective date, *id.* § 2605(c).  *See also* 12 C.F.R. § 1024.33(b)(1), (b)(3)(i).  Under this provision, a plaintiff may recover "any actual damages to the borrower as a result of the failure," 12 U.S.C. § 2605(f)(1)(A), along with costs and fees "[i]n addition to the amounts" otherwise allowed, *id.* § 2605(f)(3).  A plaintiff may further recover "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."  *Id.* § 2605(f)(1)(B).

In the Report and Recommendation, Judge Gorenstein first determined that "only Caliber and Fay ([as the [alleged] transferee and transferor)" could be proper Defendants as to this part of Plaintiffs' RESPA claim, and next found that Plaintiffs had, in any event, failed to state a claim. R&R at 22-23.  As to the latter conclusion, Judge Gorenstein found that Plaintiffs had failed to allege any non-conclusory factual allegations specifying "actual damages" proximately caused by the absence of such notice.  *Id.*; *see also Dolan v. Select Portfolio Servicing*, No. 03 Civ. 3285 (PKC), 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016) ("[T]he plain language of Section 2605

indicates that an allegation of actual damages is necessary to state a claim for liability."); *Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10 Civ. 3291 (NGG), 10 Civ. 3354 (NGG), 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012) ("A plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA.").  The Court reaches the same conclusion.

In their Objections, Plaintiffs for the first time contend that the alleged failure to notify them of the loan servicing transfer cost them the "opportunity to be awarded up to $95,000.00 toward mortgage arrears."  Objections ¶ 104.  This assertion, which appears largely if not entirely speculative, is nowhere in the pleadings and is insufficient to resurrect Plaintiffs' deficient claim. *See Razzoli*, 2014 WL 2440771, at *5 (observing that factual assertions cannot properly be raised in objections to a report and recommendation).

Lastly, the Court finds—as did Judge Gorenstein in the Report and Recommendation— that Plaintiffs' final RESPA theory regarding Defendants' purported obstruction of Plaintiffs' pursuit of loss mitigation options fails because a servicer is not obligated under RESPA or Regulation X "to provide any borrower with any specific loss mitigation option."  12 C.F.R. § 1024.41(a); *see* R&R at 23.  And while Regulation X instructs servicers to maintain certain policies and procedures to provide borrowers with accurate information about loss mitigation options, that portion of the regulation does not create a private right of action.  *See Wilson v. RoundPoint Mortg. Servicing Corp.*, No. 21 Civ. 19072 (CPO), 2022 WL 3913318, at *6 (D.N.J. Aug. 31, 2022) ("[Plaintiff's] claim under 12 C.F.R. § 1024.40 fails as a matter of law because it 'is an administrative regulation only; there is no private cause of action available to enforce [it].'" (quoting *Stefanowicz v. SunTrust Mortg.*, No. 16 Civ. 368, 2017 WL 1103183, at *7 (M.D. Pa.

Jan. 9, 2017), *report and recommendation adopted*, 2017 WL 1079163 (M.D. Pa. Mar. 22, 2017), *aff'd*, 765 F. App'x 766 (3d Cir. 2019)) (alteration in *Wilson*)).

The Court thus dismisses Count Two in its entirety.

## C.      Count Three (TILA and Regulation Z Claim)

Plaintiffs further assert violations of TILA and its implementing regulation, Regulation Z, because "Defendants failed to notify [them] of [the] mortgage servicing transfer," Am. Compl. ¶ 66, and "wrongfully activated the Ability-to-Repay test on [them]," *id.* ¶ 67.

First, as Judge Gorenstein noted, "TILA requires notification of ownership [of the debt], not transfers of servicing." R&R at 24; *see* 15 U.S.C. § 1641(g)(1) ("[N]ot later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer."). Plaintiffs' allegation that they did not receive notice of the mortgage servicing transfer from Caliber to Fay thus fails to give rise to a cognizable claim under TILA. And even setting aside this fatal defect, a claim involving a transfer that occurred in August 2021, Am. Compl. ¶ 44, triggering a notice obligation "sometime in September 2021," *id.* ¶ 62, would be time-barred by TILA's one-year statute of limitations, given that Plaintiffs commenced this action in February 2023. *See* 15 U.S.C. § 1640(e) (with exceptions not applicable here, "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation"); *accord Kuhl v. U.S. Bank Trust Nat'l Ass'n*, No. 19 Civ. 8403 (VB), 2022 WL 4088014, at *5 (S.D.N.Y. Sept. 6, 2022) (explaining that a TILA notice claim "must be brought within one year and thirty days from the transfer of the mortgage loan").

As to Plaintiffs' claim regarding Defendants' "activation of the Ability-to-Repay test on [them]," Judge Gorenstein presumed in the Report and Recommendation that Plaintiffs are referring to a January 2023 conversation with counsel for Specialized, in which, as alleged, they were informed "that prospective borrowers would need to be thoroughly evaluated as if a refinance took place" and that "the prospective borrowers' assets, debts, credit and income would all be considered against the Ability-to-Repay rule."  Am. Compl. ¶ 50; *see* R&R at 26.

Under TILA, a creditor seeking to make a residential mortgage loan must first "make[] a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan, according to its terms, and all applicable taxes, insurance (including mortgage guarantee insurance), and assessments."  15 U.S.C. § 1639c(a)(1); 12 C.F.R. § 1026.43.  Plaintiffs apparently seek to hold Defendants liable for attempting to adhere to this obligation when Plaintiffs sought to assume the Mortgage.  But as Judge Gorenstein reasoned, it is unclear "what portion of TILA *prohibits* a creditor from assessing a potential borrower's ability to repay a mortgage loan."  R&R at 26 (emphasis added).

In objecting to the Report and Recommendation, Plaintiffs refer to an interpretive rule issued by the Bureau of Consumer Financial Protection clarifying

> that where a successor-in-interest (successor) who has previously acquired title to a dwelling agrees to be added as obligor or substituted for the existing obligor on a consumer credit transaction secured by that dwelling, the creditor's written acknowledgement of the successor as obligor is not subject to the Bureau's Ability-to-Repay Rule (ATR Rule), § 1026.43, because such a transaction does not constitute an assumption as defined by Regulation Z § 1026.20(b).

Application of Regulation Z's Ability-To-Repay Rule to Certain Situations Involving Successors-in-Interest, 79 Fed. Reg. 41631 (July 17, 2014); *see* Objections ¶ 102.  As it indicates, this interpretive rule merely explains situations in which a creditor is *not required* under TILA to make

a reasonable, good faith determination of a consumer's ability to repay a residential mortgage loan; it does not anywhere *prohibit* a creditor from making such a determination.  Nor does it prohibit a creditor from merely informing a potential borrower that such a determination would be necessary—which conduct is all that Plaintiffs allege.  Plaintiffs' January 2023 conversation with counsel for Specialized thus does not give rise to a cognizable TILA claim.

This objection to the recommended dismissal of Count Three is therefore overruled and the Court dismisses Count Three.

### D.     Count Four (Dodd-Frank Act Claim)

Next, Plaintiffs accuse Defendants of violating the Dodd-Frank Act by "engag[ing] in dual tracking when [Plaintiffs] tried to engage [Defendants] in a number of home retention proposals, including a loan modification, while [Defendants] continued to foreclose on [Plaintiffs]."  Am. Compl. ¶ 70.  Implemented in response to the Dodd-Frank Act, Regulation X prohibits a servicer from "mov[ing] for [a] foreclosure judgment or [an] order of sale" "[i]f a borrower submits a complete loss mitigation application" within a certain time period and subject to certain exceptions.  12 C.F.R. § 1024.41(g); *see* R&R at 27 ("We read [Plaintiffs' claim under the Dodd-Frank Act] as asserting a claim under Regulation X, which was implemented in response to the Dodd-Frank Act.").  Judge Gorenstein concluded that Plaintiffs fail to state a claim under this dual-tracking provision because they do not plead that they had submitted a "complete loss mitigation application."  R&R at 27.  In fact, as Judge Gorenstein observed, Plaintiffs have expressly complained that they "could not have submitted a loss mitigation application as [they] were *never* offered one despite asking for one several times."  Opposition ¶ 128; *see* R&R at 27.

Plaintiffs did not object to this portion of the Report and Recommendation, and the Court discerns no error—clear or otherwise—in its determination.  The Court thus dismisses Count Four.[5]

## E.    Counts Five and Six (Fifth and Fourteenth Amendment Claims)

Counts Five and Six—alleging violations of the Fifth and Fourteenth Amendments—appear to arise from Plaintiffs' disgruntlement with procedures during their state court litigation with Defendants.  *See* Am. Compl. ¶¶ 72-80.  The Fifth Amendment's Due Process Clause protects against the actions of the federal government, whereas the Fourteenth Amendment's Due Process Clause protects against the actions of state actors.  *See Darnell v. Pineiro*, 849 F.3d 17, 21 n.3 (2d Cir. 2017) ("This case implicates the Due Process Clause of the Fourteenth Amendment because it involves state pretrial detainees who are seeking to vindicate their constitutional

---

[5] Judge Gorenstein declined to consider Plaintiffs' conclusory assertion, raised for the first time in their Opposition, "that defendants engaged in 'glaring disparate treatment in terms of fair lending practices and in violation of the Unfair, Deceptive, or Abusive Acts or Practices' section of Dodd-Frank."  R&R at 27 n.5 (quoting Opposition ¶ 128); *see* 12 U.S.C. § 5531(a) ("The [Consumer Financial Protection] Bureau may take any action authorized under part E to prevent a covered person or service provider from committing or engaging in an unfair, deceptive, or abusive act or practice under Federal law in connection with any transaction with a consumer for a consumer financial product or service, or the offering of a consumer financial product or service.").  In their Objections, Plaintiffs maintain that they should have been permitted to add this new claim in the middle of briefing on Defendants' motions to dismiss simply because they asked.  Objections ¶¶ 76-80.  It is true that courts in this District may consider new claims raised by *pro se* plaintiffs in their oppositions to motions to dismiss, provided that the claims could have been asserted based on the facts already pleaded.  *Davila v. Lang*, 343 F. Supp. 3d 254, 267-68 (S.D.N.Y. 2018) (collecting cases).  But allowing amendment here would be an exercise in futility.  The Dodd-Frank Act contains no language providing for a private cause of action for unfair, deceptive, or abusive practices.  *See generally* 12 U.S.C. § 5531.  And indeed, "[i]t is well-established and courts have consistently found [] that the Act does not provide for a private right of action under [12 U.S.C. § 5531(a)]."  *Maskanian v. Wells Fargo & Co.*, No. 21 Civ. 5361 (KAM), 2023 WL 4086430, at *3 (E.D.N.Y. June 20, 2023) (collecting cases).  The Court thus declines to grant Plaintiffs leave to amend to add this claim.  *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend." (internal quotation marks omitted)).

rights.  However, the analysis in this decision should be equally applicable to claims brought by federal pretrial detainees pursuant to the Due Process Clause of the Fifth Amendment." (citations omitted)).  Both Due Process Clauses were enacted "to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'"  *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)) (alteration in original).  As such, these clauses have limited applicability to state actors, and these protections do not extend to "invasion by private actors."  *Id.* at 195.

Plaintiffs' Fifth Amendment claim is premised on allegedly "improper e-file case conversions and random case re-assignment[s]" in the state court and Plaintiffs' resultant inability "to file a motion" there.  Am. Compl. ¶¶ 73-74; *see also* Opposition ¶¶ 138-139 (complaining that the "underlying state foreclosure action was illegally miscategorized as a tort case").  Given that Plaintiffs conceded in their submissions that they "were able to be assigned a judge and thus finally able to file a motion, after paying a Request for Judicial Intervention fee," Judge Gorenstein recommended dismissal of this claim as moot.  R&R at 28 (internal quotation marks omitted).  This Court agrees.  Moreover, as noted in the Report and Recommendation, Defendants are not state actors and so cannot be the targets of a Fifth Amendment due process claim.  *Id.*

As to their Fourteenth Amendment claim, Plaintiffs allege that neither they nor their father "receive[d] a state mandatory settlement conference [as] required under New York[] CPLR § 3408" or a "mandated foreclosure conference per [] Administrative Order 157/20."  Am. Compl. ¶¶ 77-78.  As determined in the Report and Recommendation, this claim also fails because Defendants are not state actors.  *See* R&R at 29.

Plaintiffs did not object to these portions of the Report and Recommendation.  Finding no clear error in these conclusions, the Court dismisses Counts Five and Six on the same grounds as articulated in the Report and Recommendation.[6]

### F.      Claims against Defendant Newrez

Judge Gorenstein recommended dismissal of all claims against Newrez for Plaintiffs' failure to allege in their Amended Complaint any specific conduct taken by Newrez, aside from the company's acquisition of Caliber.  R&R at 29; *see* Am. Compl. ¶ 14.  Plaintiffs did not object to this portion of the Report and Recommendation, and the Court discerns no clear error in this determination.  For this additional reason as well, the Court dismisses with prejudice Counts One, Two, Three, Four, and Six as against Newrez.

### G.      Declaratory and Injunctive Relief

The Court next turns to Plaintiffs' requests for a declaratory judgment ordering that they are entitled "to assume the Mortgage" and for injunctive relief enjoining any foreclosure sale—whether currently or imminently pending.[7]  *See* Am. Compl. ¶ 81.  It is well settled that declaratory and injunctive relief are remedies—not independent causes of actions.  *See, e.g.*, *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-45 (2d Cir. 2012) ("The [Declaratory Judgment Act] is procedural only, and does not create an independent cause of action." (internal quotation marks omitted)); *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 688 (S.D.N.Y. 2021) ("[A] request for

---

[6] As the Court adopts Judge Gorenstein's recommendation to dismiss Count Five on mootness grounds, subject matter jurisdiction is lacking as to that Count and thus it is dismissed without prejudice.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.").

[7] As earlier discussed, certain Defendants indicated that, as of April 2024, there was no date scheduled for the foreclosure sale.  Dkt. 87 at 1.  Those Defendants further advised that they intended to file a motion in the state court action requesting that the sale be scheduled.  *Id.*

injunctive relief is not an independent cause of action [but] . . . is merely the remedy sought for the legal wrongs alleged in the substantive counts." (internal quotation marks and ellipses omitted)).  As the Court has dismissed all of Plaintiffs' substantive causes of action, the Court has no basis to award any relief—whether monetary, declaratory, or injunctive.[8]

## H.    Leave to Amend

Lastly, the Court turns to whether—and to what extent—leave to amend is appropriate here.  While leave to amend should be freely granted where justice so requires, *see* Fed R. Civ. P. 15(a), even this liberal standard has its bounds.  Indeed, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

Here, the Court agrees with the Report and Recommendation that all but one of Plaintiffs' claims cannot be cured through better pleading.  *See* R&R at 30.  Accordingly, the Court grants Plaintiff leave to amend only their RESPA claim concerning Caliber's and Fay's alleged failures to notify Plaintiffs of the change of loan servicer from Caliber to Fay, in the event Plaintiffs believe that they can cure the deficiencies identified herein and plead facts that would adequately state a claim upon which relief may be granted.  Plaintiffs are cautioned that they should only file a

---

[8] The only substantive causes of action in the Amended Complaint arise from Defendants' alleged actions with respect to Plaintiffs after the judgment of foreclosure was issued.  None of those causes of action, on their face, appear to present a *de facto* appeal of the state foreclosure action.  Given the nature of those causes of action, along with the Court's above determinations that they all must be dismissed, the Court need not consider Plaintiffs' objections concerning whether the *Rooker-Feldman* doctrine would preclude the requested relief.  *See* R&R at 9-14; Objections ¶¶ 8-48.  In any event, the Court is independently barred under the Anti-Injunction Act from entering injunctive relief against the foreclosure and sale of real property ordered by a state court.  *Ungar v. Mandell*, 471 F.2d 1163, 1165 (2d Cir. 1972); *accord* Dkt. 85 (Second Circuit order affirming this Court's denial of Plaintiffs' second motion for a temporary restraining order and a preliminary injunction).

Second Amended Complaint if they believe that they can address those pleading deficiencies, and that, absent good cause shown, further leave to amend will not be granted.

## IV.  Conclusion

For the reasons above, the Court adopts the Report and Recommendation, as modified in the Opinion and Order.  Counts One, Three, Four, and Six are dismissed with prejudice and without leave to amend, and Count Five is dismissed without prejudice as moot and without leave to amend.  Leave to amend is granted on Count Two only as to Plaintiffs' failure-to-notify claim as against Caliber and Fay, which the Court dismisses without prejudice, and Count Two is otherwise dismissed with prejudice and without leave to amend.  Should Plaintiffs decide to amend once more, they must do so within thirty days of this decision.  If Plaintiffs fail to file a Second Amended Complaint within thirty days or obtain an extension of time to do so by that date, the Court will dismiss the entirety of Count Two with prejudice.  Moreover, given that Caliber and Fay are the only proper Defendants for Plaintiffs' failure-to-notify claim in Count Two, the Clerk of Court is respectfully directed to terminate Defendants Specialized Loan Servicing, LLC, Computershare Loan Services, U.S. Bank Trust, N.A., as Trustee for LSF 10 Master Participation Trust, and Newrez, LLC, and to close the motions pending at Docket Numbers 34 and 39.

SO ORDERED.

Dated: June 27, 2024
      New York, New York

                                    JOHN P. CRONAN
                              United States District Judge